Louis S. Ederer
John Maltbie
ARNOLD & PORTER LLP JUDGE DANIELS
399 Park Avenue
New York, New York 10022
Phone (212) 715-1000
Fax (212) 715-1399
*Attorneys for Plaintiff Autumnpaper Limited*

'09 CIV 8332

RECEIVED
OCT 01 2009
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

AUTUMNPAPER LIMITED, trading as
ALEXANDER McQUEEN,

               Plaintiff,

        - against -

STEVEN MADDEN, LTD. and STEVEN
MADDEN RETAIL, INC.

              Defendants.

------------------------------------------------------------ x

Civil Action No._____

**COMPLAINT**

      Plaintiff Autumnpaper Limited, trading as Alexander McQueen ( "AMQ"), by and

through its attorneys Arnold & Porter LLP, complains of defendants Steven Madden, Ltd. and

Steven Madden Retail, Inc. (collectively "Madden") as follows:

### NATURE OF THE ACTION

      1.     AMQ seeks injunctive relief and damages for acts of trade dress infringement,

false designation of origin, unfair competition and dilution, engaged in by Madden in violation of

the laws of the United States and the State of New York.

      2.     In particular, this case concerns Madden's willful and deliberate infringement of

AMQ's unique, distinctive and well-known design for a women's ankle boot known as the

"Faithful Bootie," which unique shoe design is intended to simulate the appearance of a leather

motorcycle jacket. After substantial resources were expended designing, marketing, promoting

and selling the "Faithful Bootie," and after fashion-conscious consumers and the fashion trade
had come to recognize the design of the "Faithful Bootie" and associate it exclusively with
AMQ, Madden recently launched an identical knockoff of the "Faithful Bootie" called the
"Seryna" Bootie, openly promoting it as an "unusual bootie" that is a "motorcycle jacket in a
boot" and is "the next big thing for fall."  Side-by-side comparisons of AMQ's "Faithful Bootie"
and Madden's "Seryna" Bootie appear below:

 

**Alexander McQueen's "Faithful Bootie"**      **Steve Madden's "Seryna" Bootie**

 

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332(a) and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  AMQ's claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et. seq., and substantial and related claims under the statutory and common law of the State of New York.

4.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), and § 1400 (a) and (b), because Madden is subject to personal jurisdiction within this judicial district, and/or because a substantial part of the events giving rise to these claims occurred within this judicial district.

## THE PARTIES

5.     Plaintiff Autumnpaper Limited, trading as Alexander McQueen, is a corporation organized and existing under the laws of England and Wales, having its principal place of business in London, England.  Autumnpaper Limited is the owner of the "Alexander McQueen" brand, the designer of "Alexander McQueen" brand products, and the owner of all intellectual property rights in and to "Alexander McQueen" brand products and designs.

6.     Upon information and belief, defendant Steven Madden, Ltd. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 52-16 Barnett Avenue, Long Island City, New York, 11104, and having offices and a showroom located at 1370 Avenue of the Americas, New York, New York.

7.     Upon information and belief, defendant Steven Madden Retail, Inc. is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 52-16 Barnett Avenue, Long Island City, New York, 11104, and having retail store locations within this judicial district.

## AMQ'S FAITHFUL BOOTIE TRADE DRESS

8.      AMQ is a world famous designer of luxury apparel, footwear and accessory products.  AMQ is well known and widely recognized among consumers and the fashion trade for the quality of its "Alexander McQueen" brand products and the innovativeness and uniqueness of its designs.  "Alexander McQueen" brand products are marketed to fashion-conscious consumers and are sold only in "Alexander McQueen" retail stores, in select specialty retail and high-end department stores, and through the website <www.alexandermcqueen.com>.

9.      Among the products designed by AMQ is the unique "Faithful Bootie" women's shoe design, which was successfully launched in January 2009.  Since its introduction, the "Faithful Bootie" has been a top-selling shoe product, and has been the subject of substantial promotion and extensive media coverage, in fashion publications and on the Internet.

10.     AMQ is the owner of the unique and distinctive trade dress for its Faithful Bootie shoe design (the "Faithful Bootie Trade Dress").  Consumers immediately recognize AMQ as the single source of any shoe product bearing the Faithful Bootie Trade Dress.

11.     The unique and distinctive Faithful Bootie Trade Dress consists of the following combination of design elements, together intended to simulate the appearance of a leather motorcycle jacket in a women's black leather, open-toe, stiletto-heel ankle boot, such combination of design elements giving the "Faithful Bootie" a distinctive overall look and commercial impression:

        (a)     A zipper and zipper teeth running vertically up the center of the shoe, as a zipper would be deployed on the front torso portion of a leather motorcycle jacket;

        (b)     Said zipper and zipper teeth being of an exaggerated size and thickness, designed to simulate the appearance of the zipper typically seen on a

leather jacket;

(c)     Said zipper teeth extending upward beyond the center of the boot, and

beyond the portion of the boot that can be physically zipped closed, and

ending at the points of the triangular "lapels" found on either side of the

upper portion of the shoe;

(d)     The upper portion of the shoe being intended to simulate the appearance of

the lapels and collar portion of a leather motorcycle jacket, consisting of:

i)      Two equally sized, triangular "lapels", situated on either side of the

upper portion of the boot, each "lapel" containing a silver snap at

the lower point of the "lapel" that can be attached, or snapped

closed to the side of the boot; and

ii)     Two equally sized triangles at the top rear portion of the shoe,

connected by a leather band, designed to simulate the neck collar

portion of a leather motorcycle jacket, with silver snaps in the

points of the triangles on each side of the "collar," such "collar"

portion having the capability to be folded down, in which case the

collar is seen laying flat against the top rear portion of the shoe, or

to be "turned up," as those who wear leather motorcycle jackets

often do.

(e)     A series of eight (8) semicircular, dome-shaped, protruding ridges situated

at the rear heel portion of the shoe and extending to either side of the rear

portion, each protruding ridge situated immediately above the ridge below,

separated by semicircular stitching, designed to simulate the appearance of

ridges that typically appear on the shoulders of leather motorcycle jackets.

(f)     Situated immediately below the aforesaid semicircular protruding ridges, at the rear heel portion of the shoe, a semicircular piece of leather with a vertical center stitch, designed to simulate the appearance of shoulder pads that typically appear on the shoulders of leather motorcycle jackets.

(g)     A five (5) inch stiletto heel.

(h)     A 1-1/2-centimeter high platform sole.

(i)     A 2-1/4-inch wide and 7/8-inch high, semicircular open or "peep" toe, with a black leather insole visible through the open toe.

A photograph of AMQ's "Faithful Bootie" depicting the Faithful Bootie Trade Dress described above appears below:



12.     The Faithful Bootie Trade Dress is, in and of itself, highly distinctive, and has been so recognized by consumers and the fashion trade. In addition, as a result of the uninterrupted, and continuing, promotion and sale of the "Faithful Bootie" shoe, and the widespread media attention that has been devoted to the "Faithful Bootie" shoe, including photographs of celebrities such as Lindsay Lohan, Mary-Kate Olsen and Rihanna wearing the "Faithful Bootie" shoe, the Faithful Bootie Trade Dress has acquired distinctiveness, and,

accordingly, has developed a strong secondary meaning among consumers and the trade, immediately identifying AMQ as the exclusive source of products bearing the Faithful Bootie Trade Dress, and signifying goodwill of incalculable value.

13.      The Faithful Bootie Trade Dress is not functional.

## MADDEN'S DELIBERATE ACTS OF INFRINGEMENT

14.      Madden is engaged in designing, manufacturing, advertising, promoting, selling, and/or offering for sale footwear products in interstate and international commerce, through Madden-owned retail stores and factory outlets, on Madden's own Internet website, <www.stevemadden.com>, and through a network of retailers who purchase such products from Madden at wholesale.

15.      Madden has recently commenced the advertising, promotion, distribution and sale of its "Seryna" Bootie, which is a black leather, open-toe, stiletto-heel ankle boot that is an identical and faithful copy of AMQ's "Faithful Bootie" (the "Madden Knockoff").  A photograph of the Madden Knockoff appears below:



16.      Rather than going to the effort and expense of developing and creating its own

unique shoe design, Madden, in the Madden Knockoff, has chosen to deliberately target AMQ, and has knowingly and faithfully replicated AMQ's unique and distinctive Faithful Bootie Trade Dress. In fact, the only design element of the "Faithful Bootie" that Madden did not deliberately copy is the zipper pull that contains the "Alexander McQueen" trademark. Otherwise, the design of the Madden Knockoff is identical to the Faithful Bootie Trade Dress.

17.     As a studied imitation of AMQ's "Faithful Bootie" shoe, the design of the Madden Knockoff is confusingly similar to AMQ's Faithful Bootie Trade Dress. As a result, Madden's advertising, promotion and sale of the Madden Knockoff is deliberately intended, and is likely to cause consumers, either at the point of sale or post-sale, to believe that the Madden Knockoff is authorized, sponsored, approved, endorsed or licensed by AMQ, or is in some other way affiliated, associated or connected with AMQ or the source of the Faithful Bootie Shoe Design.

18.     Madden's clear intent to trade on the popularity of AMQ's "Faithful Bootie" shoe and the well-established secondary meaning and commercial strength of the Faithful Bootie Trade Dress has not gone unnoticed. Numerous shoe and fashion commentators on the Internet have pointedly commented on the Madden's blatant copying of the "Faithful Bootie" shoe. For example, one commentator stated that "[t]hey don't really get much more blatant than Steve Madden, do they?;" that the "Faithful Bootie" shoe and the Madden Knockoff are "startlingly similar, to say the least;" and that other than the respective retail prices of the shoes, "I'd be struggling to point out too many other differences."

19.     On or about September 10, 2009, counsel for AMQ sent Madden a cease and desist letter demanding, inter alia, that Madden immediately cease manufacturing, advertising, offering to sell, and selling the Madden Knockoff, and any other shoe that consists of a design confusingly similar to the Faithful Bootie Trade Dress. Madden has refused to comply with such

demand.

20.    Madden has been engaging in the above-described unlawful activities knowingly and intentionally, or with reckless disregard for AMQ's rights in the Faithful Bootie Trade Dress.

21.    Upon information and belief, Madden intends to continue to manufacture, advertise, promote, sell, and/or offer for sale the Madden Knockoff, unless restrained from doing so.

### FIRST CLAIM FOR RELIEF
### TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(a))

22.    The allegations set forth in paragraphs 1 through 21 hereof are adopted and incorporated by reference as if fully set forth herein.

23.    The Faithful Bootie Trade Dress is used in commerce, is non-functional, is inherently distinctive, and has acquired strong secondary meaning in the marketplace.

24.    Madden, without authorization from AMQ, has designed, manufactured, advertised, promoted, distributed, sold and/or offered for sale, and/or is causing to be designed, manufactured, advertised, promoted, distributed, sold and/or offered for sale, a women's shoe that is identical in appearance to AMQ's "Faithful Bootie," and is comprised of a combination of design elements that is confusingly similar to the Faithful Bootie Trade Dress.

25.    Madden's acts are calculated to deceive, and are likely to deceive, the many consumers who recognize and associate the Faithful Bootie Trade Dress with AMQ. Moreover, this conduct is likely to cause confusion, to cause mistake and/or to deceive consumers as to the source of the Madden Knockoff, or as to a possible affiliation, connection or association between AMQ and Madden and/or between AMQ and the Madden Knockoff.

26.    Madden has thereby willfully infringed AMQ's rights in the Faithful Bootie Trade Dress, in violation of 15 U.S.C. § 1125(a).

27.     Upon information and belief, Madden intends to continue its willfully infringing conduct, and will continue to willfully infringe AMQ's Faithful Bootie Trade Dress, unless restrained by this Court.

28.     Upon information and belief, by its willful acts, Madden has made and will continue to make substantial profits and gains to which it is not in law or in equity entitled.

29.     Madden's conduct is causing and will continue to cause AMQ to suffer irreparable harm, and AMQ has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

30.     The allegations set forth in paragraphs 1 through 29 hereof are adopted and incorporated by reference as if fully set forth herein.

31.     Madden's advertising, promotion, distribution, sale and offering for sale of the Madden Knockoff, without authorization from AMQ, is calculated to, and is likely to confuse, mislead or deceive consumers, the public, and the trade as to the origin, source, sponsorship, and/or affiliation of or between AMQ and the Madden Knockoff, and is intended, and is likely to cause such parties to believe in error that the Madden Knockoff has been authorized, sponsored, approved, endorsed or licensed by AMQ, or that there is some other affiliation, connection or association between AMQ and Madden and/or between AMQ and the Madden Knockoff.

32.     Madden's conduct constitutes a false designation of the origin of the Madden Knockoff, and/or false and misleading descriptions and representations of fact, all in violation of 15 U.S.C. § 1125(a).

33.     Upon information and belief, Madden intends to continue its willful false designation of the origin of the Madden Knockoff, unless restrained by this Court.

34.     Upon information and belief, by its willful acts, Madden has made and will

continue to make substantial profits and gains to which it is not in law or in equity entitled.

35.     Madden's conduct is causing and will continue to cause AMQ to suffer irreparable harm, and AMQ has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
## TRADE DRESS DILUTION (15 U.S.C. § 1125(c))

36.     The allegations set forth in paragraphs 1 through 35 hereof are adopted and incorporated by reference as if fully set forth herein.

37.     As described above, AMQ owns valid, exclusive and subsisting rights in the Faithful Bootie Trade Dress in the United States.

38.     Through promotion, media coverage, sales, and consumer and fashion industry recognition, the Faithful Bootie Trade Dress has achieved fame, within the meaning of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

39.     Madden did not begin selling the Madden Knockoff, a product bearing a design identical and confusingly similar to the Faithful Bootie Trade Dress, until after the Faithful Bootie Trade Dress had become famous.

40.     Upon information and belief, given the fame of the Faithful Bootie Trade Dress, Madden's conduct is willful and intentional, that is, Madden deliberately copied the Faithful Bootie Trade Dress to take advantage of the goodwill and reputation AMQ had established in the Faithful Bootie Trade Dress, and to dilute the strength of the Faithful Bootie Trade Dress.

41.     Madden's deliberate use of the Faithful Bootie Trade Dress as the design of the Madden Knockoff, without AMQ's authorization, is diluting the distinctive quality of the Faithful Bootie Trade Dress, and decreases the capacity of such trade dress to identify and distinguish AMQ as the source of any goods incorporating such trade dress.

42.     Madden's Madden Knockoff is, accordingly, likely to cause dilution of the

distinctive qualities of the famous Faithful Bootie Trade Dress, in violation of 15 U.S.C. § 1125(c).

43.     Upon information and belief, Madden intends to continue its willful conduct, and will continue to willfully dilute the distinctive quality of the Faithful Bootie Trade Dress, unless restrained by this Court.

44.     Upon information and belief, by its willful acts, Madden has made and will continue to make substantial profits and gains to which they are not in law or in equity entitled.

45.     Madden's conduct is causing and will continue to cause AMQ to suffer irreparable harm, and AMQ has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### COMMON LAW TRADE DRESS INFRINGEMENT

46.     The allegations set forth in paragraphs 1 through 45 hereof are adopted and incorporated by reference as if fully set forth herein.

47.     Madden's aforesaid conduct constitutes willful trade dress infringement in violation of the common law of the State of New York.

48.     Upon information and belief, Madden intends to continue its willfully infringing conduct, unless restrained by this Court.

49.     Upon information and belief, by its willful conduct, Madden has made and will continue to make substantial profits and gains to which it is not in law or in equity entitled.

50.     Madden's conduct is causing and will continue to cause AMQ to suffer irreparable harm, and AMQ has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### COMMON LAW UNFAIR COMPETITION

51.     The allegations set forth in paragraphs 1 through 50 hereof are adopted and incorporated by reference as if fully set forth herein.

52. Madden's aforesaid conduct constitutes willful unfair competition in violation of the common law of the State of New York.

53. Upon information and belief, Madden intends to continue its willful unfair competitive conduct, unless restrained by this Court.

54. Upon information and belief, by its willful conduct, Madden has made and will make substantial profits and gains to which it is not in law or in equity entitled.

55. Madden's conduct is causing and will continue to cause AMQ to suffer irreparable harm, and AMQ has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
## DILUTION (N.Y. GENERAL BUSINESS LAW § 360-1)

56. The allegations set forth in paragraphs 1 through 55 hereof are adopted and incorporated by reference as if fully set forth herein.

57. AMQ is the exclusive owner of the Faithful Bootie Trade Dress throughout the United States, including the State of New York.

58. Through the promotion, sale and use of the Faithful Bootie Trade Dress in commerce, including commerce within the State of New York, the Faithful Bootie Trade Dress has become and continues to be famous and distinctive.

59. By the conduct described above, Madden has created and will continue to create a likelihood of injury to the public image and reputation of AMQ, and to dilute the distinctive quality of AMQ's Faithful Bootie Trade Dress, all in violation of New York General Business Law § 360-1.

60. Upon information and belief, Madden intends to continue its willful conduct, and will continue to willfully dilute the distinctive quality of the Faithful Bootie Trade Dress, unless restrained by this Court.

61.    Upon information and belief, by its willful acts, Madden has made and will continue to make substantial profits and gains to which they are not in law or in equity entitled.

62.    Madden's conduct is causing and will continue to cause AMQ to suffer irreparable harm, and AMQ has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, AMQ demands judgment against Madden as follows:

1.    Finding that: (i) Madden has violated Section 43(a) of the Lanham Act (15 U.S.C. §§ 1125(a)) and Section 43(c) of the Lanham Act (15 U.S.C. §§ 1125(c)); (ii) Madden has diluted the Faithful Bootie Trade Dress in violation of New York General Business Law § 360-1; and (iii) that Madden has engaged in trade dress infringement and unfair competition under the common law of the State of New York.

2.    Granting an injunction preliminarily and permanently restraining and enjoining Madden, its officers, agents, employees and attorneys, and all those persons or entities in active concert or participation with them, or any of them, from:

(a)    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale or selling any products which bear the Faithful Bootie Trade Dress, or any other design confusingly similar thereto, including, without limitation, the Madden Knockoff, and engaging in any other conduct constituting an infringement of any of AMQ's rights in the Faithful Bootie Trade Dress, or any other mark or trade dress owned by AMQ;

(b)    engaging in any other activity constituting unfair competition with AMQ, or acts and practices that deceive the public and/or the trade, including, without limitation, the use of design elements and designations associated with AMQ; and

(c)    engaging in any activity that will cause the distinctiveness of the Faithful Bootie Trade Dress to be diluted.

3.      Requiring such other measures as the Court may deem appropriate to prevent the public from deriving any erroneous impression that the Madden Knockoff has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale or sold by AMQ, has been authorized by AMQ, or is related to or associated in any way with AMQ or its products.

4.      Directing that Madden account to and pay over to AMQ all profits realized by its wrongful acts, and directing that such profits be enhanced in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117).

5.      Awarding AMQ its costs and attorneys fees and investigatory fees and expenses, to the full extent provided for by Section 35 of the Lanham Act (15 U.S.C. § 1117).

6.      Requiring Madden to deliver up to AMQ for destruction or other disposition all remaining inventory of the Madden Knockoff, including all advertising, promotional and marketing materials therefor, as well as all means of making same.

7.      Awarding AMQ pre-judgment interest on any monetary award made part of the judgment against Madden.

8.      Awarding AMQ such additional and further relief as the Court deems just and proper.

Dated: New York, New York
September 30, 2009

ARNOLD & PORTER LLP

By:     *Louis S. Ede*

Louis S. Ederer
John Maltbie
399 Park Avenue
New York, New York 10022
Phone:  (212) 715-1000
Fax:  (212) 715-1399
louis.ederer@aporter.com
john.maltbie@aporter.com

*Attorneys for Plaintiff Autumnpaper Limited*

16